UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>MARLON STRAW, )<br>Defendant. )<br>) | Cr. No. 15-cr-40-JJM-PAS |

MEMORANDUM & ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Claiming ineffective assistance of counsel, Marlon Straw has moved to Vacate or Set Aside His Conviction under 28 U.S.C. § 2255. ECF No. 59. The government objects to the motion (ECF No. 67) to which Mr. Straw replies. ECF No. 68. Mr. Straw makes two arguments, his counsel failed to investigate properly his case, and that counsel failed to file an appeal. Finding no merit in either of Mr. Straw's claims, the Court DENIES his Motion to Vacate.

## FACTS

Marlon Straw was the passenger in a car that the state police pulled over for speeding–79 miles-per-hour in a 65 mile-per-hour zone. After making the stop, the state troopers asked the driver and the passenger for identification. When the passenger was unable to provide an ID, the police officers asked him to step out of the car, and frisked him with his permission. Mr. Straw gave the police a false name and date of birth. The driver, whom the police also asked about the passenger's identity, gave the police a different name for him. When confronted with this

conflicting information, Mr. Straw admitted that he lied about his name, and gave the officers yet another false name. The police then arrested Mr. Straw for obstructing an officer in the execution of duty under R.I. Gen. Laws § 11-32-1. They handcuffed him and transported him to the police barracks. At the station, the police searched Mr. Straw again, and found a gun in his sock. After running a fingerprint check, the police discovered that the passenger's real name was Marlon Straw.

Mr. Straw filed a Motion to Suppress. ECF No. 21. The Court held an evidentiary hearing followed by a hearing for legal arguments. *See* Transcripts of the hearings at ECF Nos. 28 and 39. The Court ruled that the police acted properly in their stop, interrogation, and arrest of Mr. Straw and so denied his Motion to Suppress the gun found on him at the police station. *See* Bench Decision at ECF No. 39 at 53-57.

A few weeks after the denial of his Motion to Suppress, Mr. Straw plead guilty to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and illegal reentry in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2). *See* Transcript of Change of Plea Hearing at ECF No. 49. The Court subsequently sentenced Mr. Straw to 46 months of incarceration. The Clerk of Court entered the Judgment of Conviction. ECF No. 53. Mr. Straw did not file an appeal.

A year after his conviction, Mr. Straw moved for post-conviction relief under 28 U.S.C. § 2255 claiming ineffective assistance of counsel. ECF No. 59.

## STANDARD OF REVIEW

Section 2255 provides for post-conviction relief if the court sentenced a petitioner in violation of the Constitution or lacked jurisdiction to impose the sentence, if the sentence exceeded the statutory maximum, or if the sentence is otherwise subject to collateral attack. *United States v. Addonizio*, 442 U.S. 178, 185 (1979); *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998). In seeking to collaterally attack his sentence, the petitioner bears the burden of proving "exceptional circumstances" that warrant redress under § 2255. *See Hill v. United States*, 368 U.S. 424, 428 (1962); *Mack v. United States*, 635 F.2d 20, 26-27 (1st Cir. 1980). For example, an error of law must constitute a "fundamental defect which inherently results in a complete miscarriage of justice." *Hill*, 368 U.S. at 428; *accord David*, 134 F.3d at 474.

The Sixth Amendment guarantees defendants the right to effective assistance of counsel. *Lema v. United States*, 987 F.2d 48, 51 (1st Cir. 1993) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Even so, "[t]he Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather, the performance standard is that of reasonably effective assistance under the circumstances then obtaining." *United States v. Natanel*, 938 F.2d 302, 309-10 (1st Cir. 1991).

A defendant who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must prove:

  (1) that his counsel's performance fell below an objective standard of reasonableness; and

> (2) a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Strickland*, 466 U.S. at 687-88, 694; *see also United States v. Manon*, 608 F.3d 126, 131 (1st Cir. 2010). In assessing the adequacy of counsel's performance, a defendant "'must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' and the court then determines whether, in the particular context, the identified conduct or inaction was 'outside the wide range of professionally competent assistance.'" *Manon*, 608 F.3d at 131 (quoting *Strickland*, 466 U.S. at 690). As for the second prong, or the prejudice requirement, under *Strickland*, a "reasonable probability is one sufficient to undermine confidence in the outcome…In making the prejudice assessment, [the court] focuses on the fundamental fairness of the proceeding." *Id.* Unless the petitioner makes both showings, it cannot be said that the conviction resulted from "a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687; *see also Reyes-Vejerano v. United States*, 117 F. Supp. 2d 103, 106 (D.P.R. 2000) ("The petitioner has the burden of proving both prongs of this test, and the burden is a heavy one."). In sum, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

*Strickland* instructs, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance;

4

that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Moreover, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Finally, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

The same principles apply in the context of guilty pleas. *See Hill*, 474 U.S. at 57. The *Hill* Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Id.* at 58; *see also Padilla v. Kentucky*, 559 U.S. 356, 371 n.12 (2010) ("In *Hill*, the Court recognized—for the first time—that *Strickland* applies to advice respecting a guilty plea."). The first prong of the *Strickland* test is just a restatement of the standard of attorney competence described above. *Hill*, 474 U.S. at 58.

> The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Id.* at 59; *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice."). The *Hill* Court reiterated that, as stated in *Strickland*,

"these predictions of the outcome at a possible trial, where necessary, should be made objectively ...." 474 U.S. at 59-60; *see also Padilla*, 559 U.S. at 372 (noting, "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances").

DISCUSSION

In his petition, Mr. Straw claims that his counsel failed to investigate properly the case and failed to file an appeal. ECF No. 59 at 13, 16. This Court declines to find that counsel's performance fell below an objective standard of reasonableness or that the performance resulted in actual prejudice to render Mr. Straw's assistance of counsel ineffective.

A. Failure to Investigate

Mr. Straw alleges that his attorney failed to make a proper investigation and that if he had not so failed there is a reasonable probability that the results would have been different. He points to three alleged failures on his counsel's part—not getting a statement from his sister who was the driver of the car; not asking for evidence from ancillary devices like body or cruiser cams; and failing to heed the judge's direction during the second round of legal briefing. The Court must first determine if the attorney's performance fell below an objective standard of

6

reasonableness, and then decide, if so, whether the outcome would have been different.

*1. Performance*

This Court has no doubt that both attorneys who represented Mr. Straw consistently exercised reasonable professional judgment in their representation. The Court observed counsel's vigorous, professional, and effective representation of Mr. Straw from pressing the Motion to Suppress, through the change of plea, and to his sentencing advocacy.

Mr. Straw first claims that his attorney was deficient for "failing to get a statement from one of the main witnesses to the traffic stop–the Petitioner's sister (the driver)." ECF No. 59 at 13. The problem with Mr. Straw's assertion is that he fails to allege what his sister would have said that would have materially affected his case. There is nothing here that shows the failure to get a statement from his sister was substandard representation. In fact, it may have well been a smart legal strategy given the evidence that Mr. Straw's sister was also accused of lying to the police at the scene. Decisions about what witnesses to call or from whom to get statements are quintessentially matters of litigation strategy. The *Strickland* court explained that judicial review of counsel's performance must be highly deferential as "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel

7

was unreasonable." 466 U.S. at 689. Mr. Straw has failed to show that his counsel's actions in this regard were unreasonable.

Mr. Straw's second claim of improper investigation is that "counsel did not examine any ancillary devices that could have established the exact time of the stop." ECF No. 59 at 13. The problem with this assertion as a basis for a claim of ineffective assistance of counsel is that Mr. Straw fails to offer any explanation about how this information would have helped him prevail on the merits of the suppression motion. The basis of the Court's denial of the Motion to Suppress was that Mr. Straw violated a state law against obstructing an officer by giving the officer false information about his name and date of birth. Based on his actions, the police took Mr. Straw to the state police barracks where they discovered the gun in his sock. The timing of the stop was not relevant to the outcome of the motion.

Lastly, Mr. Straw (falsely) asserts that this Court "scolded the defense counsel for not heeding his instructions and providing clarity in his brief. By failing to address the Court's concerns, the Petitioner's suppression motion was denied." ECF No. 59 at 14.

At the end of the evidentiary portion of the hearing on the Motion to Suppress, the Court stated:

> ...you're welcome to brief whatever you want, now that we have facts out, as it relates to anything else that has already been briefed. But the part that I continue to think has not been briefed to my satisfaction is the issue of whether the arrest of Mr. Straw for obstructing a police officer was consistent with the Fourth Amendment at that stage. I think the rest has now been laid out. I think it's been well briefed. Again, if you want to supplement based on the facts; but that issue has not been

briefed, and I would like that briefed, and then I'd like to have a hearing, a legal hearing on all of the issues.

ECF No. 28 at 141-142.

At the hearing involving legal argument, counsel for Mr. Straw correctly pointed out to the Court that

> there's just not a lot of Rhode Island law on the definition of obstruction. There's evidence, there's cases from the past that say that someone was arrested for obstruction, they say what the elements are, but they never actually define what obstruction entails. So I will get to that certainly. But again, I think that this motion to suppress should be granted based on those two independent legal grounds; first, the one we'll talk about having to do with the *Rodriguez* case and, secondly, to do with there being no probable cause or, even prior to that, reasonable suspicion that the obstruction law was violated.

THE COURT: Okay.

ECF No. 39 at 4.

There is simply no basis for Mr. Straw's assertion that this Court "scolded" his counsel, or that his counsel did not heed the Court's directions. The Court had simply directed counsel's attention to the state charge that resulted in the police taking Mr. Straw into custody. Counsel adequately addressed the Court's concern.

   *2. Prejudice*

Even if the Court had found that counsel's representation was substandard [which it explicitly does not], Mr. Straw would still have to show "a reasonable probability that, but for [his counsel's acts or omissions], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Even if counsel had done everything that Mr. Straw now alleges was deficient in his representation, the outcome would have been the same—denial of a Motion to Suppress followed by a

9

change of plea made knowingly and voluntarily. The Court based its refusal to suppress the gun found on Mr. Straw at the police barracks on his lawful detention at the scene on a state charge of obstructing a police officer. Probable cause for this charge existed because Mr. Straw repeatedly lied and actively hid his identify form the officers. No matter raised by Mr. Straw would have changed this outcome.

### B. Failure to File an Appeal

Mr. Straw alleges that he instructed his counsel after sentencing to file an appeal. But such unsupported assertion is contradicted by the sworn statement of his that Mr. Straw instructed him not to file an appeal. ECF No. 67-1 at 3. Moreover, this assertion is supported by a signed statement from Mr. Straw dated August 18, 2016, wherein he specifically "authorizes [his counsel] not to file an appeal. *Id.* at 4.

## CONCLUSION

Counsel's conduct supported the proper functioning of the adversarial process such that the proceedings produced a just result. Mr. Straw received effective assistance of counsel and therefore the Court DENIES his Motion to Vacate or Set Aside His Conviction under 28 U.S.C. § 2255. ECF No. 59.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

October 16, 2018